UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARY E. GALLANT, | ) |
|     *Plaintiff* | ) ) ) ) |
| v. | )  No. 2:11-cv-421-NT |
| MICHAEL J. ASTRUE,<br>*Commissioner of Social Security,* | ) ) ) ) |
|     *Defendant* | ) |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy.[2] The plaintiff seeks reversal and remand on the basis that the administrative law judge improperly evaluated the medical opinion of her longtime treating gastroenterologist, Kenneth A. Lombard, M.D. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 14, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] The plaintiff applied for a type of SSD benefits known as child's disability benefits. *See* Record at 8. To be entitled to child's disability benefits on the earnings record of a wage earner, a claimant must demonstrate that she is the insured person's child, is dependent on the insured, is unmarried, and, if over age 18 and not eligible for benefits as a full-time student, has a disability that began before age 22. *See* 20 C.F.R. § 404.350; *see also, e.g.*, *Starcevic v. Commissioner of Soc. Sec.*, No. 08-13128, 2009 WL 2222631, at *6 (E.D. Mich. July 22, 2009) (claimant applying for child's disability benefits must demonstrate that she was disabled before she turned 22 "and was continuously disabled from the date of her twenty-second birthday through the date that she applied for benefits."). The plaintiff, born on November 23, 1989, had not attained age 22 as of June 8, 2008, her amended alleged onset date of disability. *See* Finding 1, Record at 10.

1

("Statement of Errors") (ECF No. 9) at 2-3. I find no error and, hence, recommend that the decision be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a severe impairment of a history of colitis, status-post colectomy with pouch, Finding 3, Record at 11; that she retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) and to push and pull within the weight tolerances of light work, could never climb ropes, ladders, or scaffolds, could occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl, needed to avoid unprotected heights, and required ready access to bathroom facilities once per hour between normal breaks, Finding 5, *id.* at 12; that, considering her age (18 years old, defined as a younger individual, on her alleged disability onset date), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 15-16; and that she, therefore, was not disabled from June 8, 2008, her alleged disability onset date, through May 24, 2011, the date of the decision, Finding 11, *id.* at 16-17. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as

adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

The plaintiff challenges the rejection of her longtime treating gastroenterologist Dr. Lombard's June 8, 2008, opinion that she was unable to work a normal work schedule due to difficulties from "pouchitis," referring to a "J-pouch" that she had as a result of a colectomy.  *See* Statement of Errors at 2.  She contends that this opinion supported her testimony regarding limitations resulting from fatigue, recurrent infection, and bathroom frequency.  *See id.*; *see also* Record at 40-48.

The commissioner's regulations promise that controlling weight will be given to the opinion of a treating source "[i]f [the commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]"  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

However, controlling weight can never be given to opinions on issues reserved to the commissioner, such as whether a claimant is disabled or is capable of working only part-time. *See id*. §§ 404.1527(e)(2)-(3), 416.927(e)(2)-(3); *Hallock v. Astrue*, No. 2:10-cv-374-DBH, 2011 WL 4458978, at *6 (D. Me. Sept. 23, 2011) (rec. dec., *aff'd* Oct. 12, 2011).

Nonetheless, even with respect to issues reserved to the commissioner, an administrative law judge must supply "good reasons" for discounting the opinion of a treating source. *See, e.g.,* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("[The commissioner] will always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2012) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2012) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").

Treating source opinions are evaluated based on several enumerated factors: (i) length of the treatment relationship and frequency of examination, (ii) nature and extent of the treatment relationship, (iii) supportability — *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) whether the treating physician is offering an opinion on a medical issue related to his or her specialty, and (vi) other factors highlighted by the claimant or others. *See* 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

In a letter dated June 8, 2008, Dr. Lombard stated, in relevant part:

> [The plaintiff] has been my patient since she was a young child for problems with ulcerative colitis. In the course of her care over time, she eventually required a

4

>colectomy because of her worsening symptoms. While theoretically this procedure would have been curative, she has had considerable difficulty with the procedure of placing a reservoir to minimize the number of bowel movements per day. This "J-pouch" has intermittently become inflamed and required additional treatment. At best, [the plaintiff] often requires frequent evacuation of the intestine, which is worsened when there is what is known as pouchitis. She often [has] 6 to 8 stools per day, making it relatively difficult to maintain a normal schedule with respect to work and other activities. Often, her schedule must be planned primarily around the difficulties she has with the pouchitis following her colectomy. I would therefore consider that she is still partially disabled, in the sense that she is not able to maintain what would be considered a normal work schedule, although she may be able to have some modification of a regular schedule for purposes of short periods of attending class. Long engagements of both work and class would be relatively difficult for her to perform.

Record at 507.

On February 17, 2010, DDS nonexamining consultant Richard T. Chamberlin, M.D., completed an RFC form assessing certain limitations as a result of the plaintiff's difficulties status-post colectomy but noting that his opinion differed from that of Dr. Lombard (erroneously referred to as "D. Emery"), which he deemed "out of date[.]" *Id*. at 343.

Dr. Lombard's own progress notes indicate that, as of August 29, 2007, the plaintiff's recent pouchitis had resolved. *See id*. at 512. When the plaintiff was next seen by Dr. Lombard on March 10, 2008, she complained of weight loss and tiredness and had a tender epigastric area on palpation. *See id*. at 247-48. Dr. Lombard questioned whether she had melena/guaiac-positive stools, prescribed Cipro, and ordered laboratory studies. *See id*. at 248. Dr. Lombard next saw the plaintiff on January 20, 2010, when she reported that she was having about six to seven stools per day, was tired, and had left leg cramps. *See id*. at 331. Dr. Lombard questioned whether she had iron deficiency, and ordered laboratory studies. *See id*. at 332. In his most recent progress note of record, dated September 29, 2010, Dr. Lombard stated that the plaintiff was having about five stools a day but that cramping had resolved. *See id*. at 505. He prescribed Vitamin D, and instructed the plaintiff to call as needed and to return in one year. *See id*. at 506.

In response to a request from the plaintiff's counsel for additional information about the plaintiff, Dr. Lombard wrote in an email dated May 3, 2011:

> I am not able to, from my perspective, adequately address your question. While I do believe that [the plaintiff's] condition does make her very susceptible to medical reasons for needing to alter her schedule on a sporadic basis, I am unable to define what portion of her time would be so affected. To that end, if this is related to the need for disability I would recommend that a formal assessment of her capacity to work and function be undertaken so that the best decision can be made for her. I do not, at present, have adequate contact to make that precise a determination of the disability.

*Id*. at 586.

At the plaintiff's hearing, held on May 17, 2011, medical expert William J. Hall, M.D., testified that he agreed with the restrictions set forth by Dr. Chamberlin. *See id*. at 54-55. Asked by the plaintiff's counsel whether he disagreed with Dr. Lombard's June 8, 2008, opinion that the plaintiff could not maintain a normal work schedule at that time, Dr. Hall testified, "I am not able to voice disagreement with it." *Id*. at 55. He added: "I'm not able to identify a basis on which he makes that . . . conclusion on the basis of . . . his primary source clinical records that I'm able to examine. . . . I don't know how he reached that conclusion." *Id*. He noted, "I understand that he knows [the plaintiff] better than I do." *Id*. at 57.

However, Dr. Hall also testified, in response to the plaintiff's counsel's question as to whether her "testimony about fatigue and susceptibility to infections" was "reasonably possible": "[I]f there was dysfunction of the immune system . . . that made [the plaintiff] unusually susceptible to infection, I would expect that to be referenced in Dr. Lombard's clinical notes – clinical records, and it's not." *Id*. at 56. When pressed as to, regardless of what was in Dr. Lombard's notes, the plaintiff's testimony was reasonably possible given her whole history, Dr. Hall responded that it was not, explaining that she was "no longer taking any

immunosuppressive medications" and there was "no clinical record of unusual infections occurring for [the plaintiff] during this period." *Id.*

The administrative law judge gave great weight to the Hall and Chamberlin opinions. *See id.* at 15.  He found Dr. Lombard's June 8, 2008, opinion regarding difficulty maintaining a normal work schedule "inconsistent with the objective medical evidence" and observed that his opinion that the plaintiff was partially disabled addressed an issue reserved to the commissioner. *Id.* at 14.  He added, "[m]ost importantly, Dr. Lombard's recent treating source statement [dated May 3, 2011] undermines this prior conclusion." *Id.* (citation omitted).  He explained: "Dr. Lombard wrote that he is 'unable to define what portion of [the claimant's] time' would be affected by her condition" and "indicated that he does not 'have adequate contact to make that precise a determination of the disability.'" *Id.* at 14-15 (quoting *id.* at 586).  Therefore, he gave his June 8, 2008, letter little weight.  *See id.* at 15.

The plaintiff faults the administrative law judge's rejection of Dr. Lombard's June 8, 2008, opinion on the bases that (i) Dr. Hall was not able to voice disagreement with it and acknowledged that Dr. Lombard knew her best, (ii) Dr. Lombard in fact did know her best, given his longstanding treating relationship with her, and (iii) Dr. Lombard's opinion was supported by the record.  *See* Statement of Errors at 2-3.

As counsel for the commissioner contended at oral argument, to the extent that the plaintiff suggests that Dr. Hall was agreeing with Dr. Lombard's opinion, the record indicates otherwise.  Although Dr. Hall was not able to voice disagreement with Dr. Lombard's opinion, he made clear that he did not see how it was supported by Dr. Lombard's own progress notes, and that the fatigue and recurrent infections about which the plaintiff had testified were not

"reasonably possible" based on either Dr. Lombard's progress notes or the plaintiff's whole history. *See* Record at 55-56.

Although, at oral argument, the plaintiff's counsel contended that Dr. Lombard's 2011 opinion did not modify his 2008 opinion, the 2008 opinion was, at the very least, outdated, as noted by Dr. Chamberlin. *See id.* at 343. To the extent that the plaintiff argues that Dr. Lombard's June 8, 2008, opinion is supported by the record, she does not explain how, *see* Statement of Errors at 3, and Dr. Hall found otherwise. In these circumstances, the mere fact that Dr. Lombard was the plaintiff's longtime treating specialist, and that Dr. Hall acknowledged that Dr. Lombard knew her best, did not oblige the administrative law judge to accord the June 8, 2008, controlling or significant weight. He supportably resolved the conflict in the opinion evidence of record.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of September, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge